IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NOHEMY ESCOBEDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No.  3:13-cv-979-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Nohemy Escobedo ("Plaintiff" or "Escobedo") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed and remanded for further proceedings.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including chronic obstructive pulmonary disease and acute respiratory distress syndrome, which caused shortness of breath, dizziness, and lightheadedness as well as ongoing effects from pneumonia in January 2009 that caused her to be placed into an induced coma. *See* Administrative Record [Dkt. No. 15] ("Tr.") at 16. Such effects included incontinence, leg pain and weakness, and anxiety. *See id*. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and

on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on November 7, 2011. *See id.* at 28.

At the time of the hearing, Plaintiff was 33 years old. *See id.* at 31. She has an eleventh-grade education and past work experience as an office clerk combined with an employment interviewer, an appointment clerk, and a personnel records clerk combined with a payroll clerk. *See id.* at 19. Plaintiff has not engaged in substantial gainful activity since January 30, 2009. *See id.* at 13.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from mild restrictive lung disease secondary to acute respiratory distress syndrome, history of MRSA pneumonia, critical illness polyneuropathy, left lower extremity weakness, and anxiety, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 13-14. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as an office clerk and an appointment clerk. *See id.* at 18-19. Alternatively, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a routing clerk, a printed products assembler, or an information clerk – jobs that exist in significant numbers in the national economy. *See id.* at 20. Given her age, education, and exertional capacity for light work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that the ALJ improperly rejected her treating physician's opinions.

The Court determines that the hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the

resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that the ALJ improperly rejected the opinions of her treating physician, which resulted in reversible legal error.

In her decision, the ALJ reviewed the medical records and noted the following findings. The treatment notes from August 2009 indicated the claimant had only mild auditory deficits, reading comprehension deficits, and expressive and cognitive language deficits. *See* Tr. at 14. At that same time, Plaintiff was independent in eating, medication management, toileting, dressing, and activities of daily living as well as moderately independent in grooming and bathing and was starting to participate more in activities with her family. *See id.* The ALJ found that these facts, along with the finding that Plaintiff experienced no episodes of decompensation, indicated that

Plaintiff did not meet or equal the criteria of listings for Neurological Impairments or Anxiety-Related Disorders. *See id.* at 14-15.

In reviewing the medical records related to her physical impairments, the ALJ relied on the above-referenced treatment notes and also relied on the following findings. At the time of her discharge from Baylor's rehabilitation program in August 2009, Plaintiff had full range of motion in her lower extremities but was slightly impaired in coordination of her left lower extremity and continued to have shortness of breath with prolonged activity. *See id.* When Plaintiff delivered her third child in March 2010, pulmonary functions had significantly improved from the prior year, and she was assessed with mild restrictive lung disease secondary to Acute Respiratory Distress Syndrome ("ARDS"). *See id.* The ALJ concluded that a physical examination of Plaintiff in March 2010 was largely normal. *See id.* Based on these records, the ALJ found that Plaintiff had largely recovered from her original illness in January 2009 and was able to perform light work. *See id.* at 17-18. The ALJ gave little weight to the opinion of Plaintiff's treating physician throughout the analysis, stating that "the claimant's treating doctor stated an agenda to try to help the claimant obtain insurance. Therefore, her opinion that the claimant is disabled is given little weight." *Id.* at 18 (citations omitted).

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Johnson, Plaintiff's treating physician, without weighing the six factors laid out in *Newton*, and instead relying on the ALJ's own opinion. *See* Dkt. No. 19 at 19. Plaintiff also contests the ALJ's findings that Dr. Johnson had an "agenda" to help Plaintiff receive insurance benefits or that any conclusory statements made by Dr. Johnson warrant rejection of her opinion. *See id.* at 19-20. Plaintiff further points to records that she contends demonstrate that her condition continued to deteriorate after her August 2009 discharge from Baylor's therapy program. *See id.* at 21. Finally, Plaintiff argues the ALJ erred in failing to consider the fact that she could not afford treatment and that, for that reason, many of her symptoms went untreated. *See id.* at 19. Plaintiff argues that, because of her inability to afford treatment, the ALJ should not have rejected Dr.

Johnson's opinion based on the fact that Plaintiff was not receiving "even conservative treatment for her symptoms." *Id.*

Defendant contends that the ALJ provided several reasons for giving Dr. Johnson's report little weight, including the fact that the symptoms listed did not support her finding of disability. *See* Dkt. No. 21 at 6-7. Moreover, Defendant argues that it was not error for the ALJ to fail to consider the six factors in *Newton* because the ALJ recited first-hand evidence contradicting Dr. Johnson's opinion, namely, the report of Dr. Marquez-Kerguelen. *See id.* at 8. Defendant also contends that the mild findings, referenced by the ALJ, from exams conducted in July and August 2009, March 2011, and June 2011 all contradict Dr. Johnson's findings and support the ALJ's findings. As to Plaintiff's claims that the ALJ ignored the fact that she could not afford prescribed treatment in the credibility analysis, Defendant contends that there was no objective evidence to corroborate her claims of inability to afford treatment. *See id.* at 10. Defendant also contends that Plaintiff failed to demonstrate she would be disabled without treatment, a necessary component of such an inability to afford treatment analysis. *See id.*

The Court is not convinced by Defendant's arguments. Defendant's claim that the "ALJ recited first-hand evidence contradicting Dr. Johnson's opinions" is something of a stretch, once the records relied upon by the ALJ are reviewed. *See* Dkt. No. 21 at 8. Dr. Marquez-Kerguelen's records state very little with respect to Plaintiff's medical condition, and the Court cannot even locate all of the information that Defendant claims to be in Dr. Marquez-Kerguelen's records. *Compare id., with* Tr. at 727-729.

This is not a situation where the "'ALJ weigh[ed] the treating physicians opinion on disability against the medical opinion of other physicians who [had] treated or examined the claimant and [had] specific medical bases for a contrary opinion.'" *Qualls*, 339 F. App'x at 467 (quoting *Newton*, 209 F.3d at 458). The comments relied upon by Defendant in Dr. Marquez-Kerguelen's reports are not even primarily related to Plaintiff's alleged disabling impairments. *See* Dkt. No. 21 at 7-8; Tr. at 725-29.

While the ALJ stated that she reviewed the evidence in accordance with 20 C.F.R. § 404.1527, she did not appear to do so. There is no discussion of any physician's length of treatment or frequency of examination; nor is there any discussion of the nature and extent of the treatment relationship. While there is some discussion of the medical evidence record as a whole, there is no analysis of the support afforded to the physician's opinion by the medical evidence of record, the consistency of the opinion with the record as a whole, or the specialization of the treating physician.

Despite Defendant's arguments otherwise, the ALJ explicitly stated that she gave the treating physician's opinion little weight because she "stated an agenda to try to help the claimant obtain insurance." Tr. at 18. A review of the citation on which the ALJ relied for that statement, however, reveals only a comment that Plainiff "will have difficultly getting care in light of insurance issues." *Id.* at 402. The doctor also states that she "strongly encouraged" Plaintiff to register at Parkland for ongoing care and recommended Plaintiff go to Parkland to see if she could obtain more services. *See id.*

Moreover, contrary to the ALJ's and Defendant's assertions, Dr. Johnson's records do not appear to be entirely inconsistent. In her March 9, 2011 Physical

Capacities Evaluation, Dr. Johnson referenced Plaintiff's limitations of sitting for only 2 hours and standing or walking for only 2 hours out of an 8-hour day, her problems with incontinence and frequent falls, her debilitating fatigue and pain levels, as well as the fact that Plaintiff "has impaired cognition, speed of processing, and irritability/emotional liability" due to her injury and prolonged respiratory distress. *See id.* at 397-400. Dr. Johnson's March 11, 2011 report only seems to support these findings. *See id.* at 401-02. While some of the notes under Dr. Johnson's "Physical Examination" may seem to support a finding of no disability, her impression based on her findings does not support the ALJ's, or Defendant's, conclusions. *See Scott v. Heckler*, 770 F.2d 482, 485-86 (5th Cir. 1985). Dr. Johnson's medical opinion, based on her examination and treatment of Plaintiff over a period of time, was supported by her notes from her March 2011 reports as well as other treatment notes. *See id.*; Tr. at 339, 345.

To summarize, neither the ALJ nor Defendant has pointed this Court to any evidence that directly contradicts Dr. Johnson's findings; the rationale provided for giving little weight to Dr. Johnson's findings – that she had an agenda – is not supported by the evidence; and Dr. Johnson's findings and notes do not appear to be entirely inconsistent. As such, the ALJ was required to analyze the six factors laid out in 20 C.F.R. § 404.1527(c) before rejecting Dr. Johnson's opinion, which the ALJ failed to do. This constituted legal error.

The Court notes that, once a proper analysis of the six factors, as required, is performed, the ALJ may well have been correct to give Dr. Johnson's opinion little

weight. But it is the ALJ's responsibility to have undertaken that analysis. The ALJ's residual function capacity did not take into account many of Dr. Johnson's limitations, such as Plaintiff's limitation of sitting only two hours and standing or walking only two hours in each 8-hour workday, her inability to perform repetitive tasks with her left hand, her incontinence, or her fatigue.

The Court cannot reweigh the evidence and is unable to say what the ALJ would have decided had she properly analyzed Dr. Johnson's opinion, and, if necessary, afforded it greater weight. Had the ALJ given different consideration to Dr. Johnson's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; *see also Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

Because it was error to give Dr. Johnson's opinion little weight without analyzing the six factors laid out in 20 C.F.R. § 404.1527(c), the Court need not further

consider the arguments regarding Plaintiff's inability to afford treatment. The Court notes, however, that there are numerous references in the record to Plaintiff's inability to continue treatment due to lack of insurance. *See, e.g.*, Tr. at 344, 346, 359, & 372.

For the above reasons, the Court concludes that the ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Johnson's opinion was prejudicial error and determines that this matter must be reversed and remanded.

### Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

DATED: January 14, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

-14-